IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

PASTORI M. BALELE,

                        Plaintiff,

    v.

ANDREA OLMANSON, BOB CONNOR,
DEPARTMENT OF CORRECTIONS,
DEPARTMENT OF WORKFORCE DEVELOPMENT,
EDWARD F. WALL, GARY HAMBLIN,
J.B. VAN HOLLEN, JACK LAWTON,                      OPINION & ORDER
JEAN NICHOLS, JERRY SALVO, SCOTT WALKER,
STEPHEN A. HERJE, THOMAS PIERCE,                      13-cv-783-jdp
MARK GOTTLIEB,
DEPARTMENT OF TRANSPORTATION,
DEPARTMENT OF ADMINISTRATION,
MIKE HUEBSCH, CATHY STEPP,
DEPARTMENT OF HEALTH SERVICES,
STEPHANIE SMILEY, and
DEPARTMENT OF NATURAL RESOURCES,

                        Defendants.

---

       In this case removed from the Dane County Circuit Court, plaintiff Pastori Balele brought several claims related to his unsuccessful applications for employment with the state of Wisconsin, including claims under Title VII of the Civil Rights Act, the due process and equal protection clauses of the Fourteenth Amendment, and claims for malicious prosecution, denial of public accommodations, and invasion of privacy. Several claims and defendants were dismissed in an April 24, 2014 order. Dkt. 26. I granted defendants' motion for summary judgment on Balele's remaining claims in an August 13, 2015 order. Dkt. 74.

       Balele filed a motion to alter or amend the judgment, Dkt. 78, and later followed with a motion for relief from the judgment, Dkt. 126. The parties have filed a handful of other motions relating to the two substantive motions, all of which I will address below.

Given the sanctions against Balele, it is an open question whether the court should accept for filing his postjudgment motions. The Court of Appeals for the Seventh Circuit has sanctioned Balele by directing all courts of the circuit to reject his filings until he pays off the substantial costs he has incurred in litigating previous frivolous cases, and unless he files an affidavit certifying that the matters he raises in the proposed filing are not frivolous and have not been raised in previous suits. *Balele v. Barnett*, Case No. 96-1133 (7th Cir. Apr. 29, 1997). In situations in which a defendant removes a civil action originally filed by Balele in state court, this court has interpreted the sanction order to generally limit Balele's ability to file documents proactively, but it has allowed him to file responses to motions filed by the defendant. *See* Dkt. 74 at 2 n.1; *see also Balele v. Sears, Roebuck and Co.*, 12-cv-140-slc, at 1-2 (W.D. Wis. May 23, 2012). Also, in the August 13, 2015 summary judgment order, I modified the sanctions against Balele in future removal actions by explaining that Balele will have to provide for the court's inspection the evidence he believes supports his claims without forcing defendants to go through the effort and expense of filing their own motion for summary judgment. Dkt. 74, at 35-36.

Despite these sanctions, I conclude that the prudent course of action is to allow Balele, like any losing litigant, to raise his concerns with the court's decision. But after considering his motions, the parties' briefing on those motions, and the parties' other related filings discussed further below, I will deny his both of his postjudgment motions.

A. **Motion to alter or amend judgment**

Balele has filed a motion titled "motion for reconsideration to amend opinion and order," Dkt. 78, which I will construe as a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). To prevail on a motion for reconsideration under Rule

59, a petitioner must present newly discovered material evidence or establish a manifest error of law or fact. *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). "Rule 59 is not a vehicle for rearguing previously rejected motions . . . ." *Id*.

Balele organizes his brief-in-chief by listing more than 20 passages from the summary judgment order that he believes contain errors. Many of his arguments miss the point of the reasoning in the summary judgment order or misunderstand the Rule 59 standard of review. Ultimately, none of them persuade me that the judgment should be amended. I will not address each of Balele's points in detail below, but I will address what seem to be the main issues in his motion.

1. **DOC's attempt to get a state court injunction prohibiting Balele from applying for DOC jobs**

Balele brought claims against defendant Andrea Olmanson, former assistant legal counsel for the DOC, for her role in attempting to enjoin him from applying for DOC jobs in the future. I summarized the facts regarding that litigation as follows:

> On July 22, 2011, defendant Olmanson, working as assistant legal counsel for DOC, filed a "Petition for Restraining Order and/or Petition and Motion for Injunction Hearing" against plaintiff in the Dane County Circuit Court. In the petition, Olmanson alleged that plaintiff had brought repeated vexatious litigation and harassed DOC staff during the job selection process. She also alleged that plaintiff had made public comments indicating that he was not seriously seeking a job with the DOC. Several days prior, Olmanson had observed a series of comments by plaintiff on the website The Huffington Post and attached a "screen shot" of the posting to an affidavit that she filed in support of the petition. In the comments, plaintiff suggested that he was not sincerely looking for a job and stated that he was "too old to work for somebody else." Dkt. 49-2, at 2. On July 22, 2011, a court commissioner entered a temporary restraining order barring plaintiff from applying for DOC jobs or otherwise harassing DOC employees. However, on July 29, 2011, following a hearing, the presiding judge dismissed

3

the case after determining that DOC had not met its burden of proof.

Dkt. 74, at 9.

In the summary judgment order, I discussed Olmanson's alleged harassing litigation in considering Balele's employment discrimination claims, stating that "[p]laintiff argues that defendant Olmanson's decision to seek a court order enjoining plaintiff from applying for DOC jobs shows the DOC's discriminatory animus," and that "[h]is main argument is that defendants are foreclosed from raising their non-discriminatory rationale under the *Rooker-Feldman* doctrine, because the state court heard Olmanson's rationale and dismissed the petition." *Id*. at 24.

One of the major thrusts of Balele's Rule 59 motion is that defendants were involved in "coll[u]sion of fraud" in the hiring decisions, *id*. at 16, which I take to mean that defendants' stated qualification-based rationale for not hiring Balele was a pretext for racial discrimination. Balele explained his theory in his brief opposing summary judgment:

> Indeed Defendants' stereotype attitude came to life during the hearing in [the state court case]. Olmanson representing Walker, Van Hollen, Hamblin and other Defendants, argued that Balele was not qualified for the positions for which he had applied. This was while Olmanson was holding DOC papers showing that Balele had taken DOC exams, certified and indeed interviewed for the positions. The judge confronted Olmanson by asking her if the documents the court had were the same as those Olmanson was holding. Olmanson said yes. The Court then said that the documents the court had showed clearly that Balele had been certified as qualified for the positions. Olmanson turned red with anger. The state Court stopped her from arguing any further. There is no way to interpret Olmanson's arguments other than she and other Defendants held stereotype that Blacks were intellectually inferior and therefore however qualified, they deserved not be appointed for DOC positions at HDQs.

Dkt. 60, at 18-19.

In his Rule 59 motion, Balele reiterates his belief that the state court judge's denial of the injunction was based on a conclusive finding that Balele was qualified for DOC employment. Dkt. 79, at 16. ("[This court] should remember [it] has no power to undo [the] state court judgment.").

I addressed the preclusion argument in the summary judgment order:

> Plaintiff fails to present any evidence showing this rationale to be a pretext. His main argument is that defendants are foreclosed from raising their non-discriminatory rationale under the *Rooker-Feldman* doctrine, because the state court heard Olmanson's rationale and dismissed the petition. The *Rooker-Feldman* doctrine is a restriction on the ability of a plaintiff to attack state-court judgments; *Rooker-Feldman* is not an offensive tool to be used against a defendant in federal court. Perhaps plaintiff means to say that the principle of issue preclusion blocks defendants from raising this argument, but that argument goes nowhere. Plaintiff does not provide a transcript of the hearing at which the case was dismissed, but his own accounting of what happened at the hearing does not show that the state court considered Olmanson's actions to be a result of discriminatory intent. Rather, the state court simply did not buy Olmanson's argument that plaintiff was unqualified for the positions he kept applying for, and concluded that the DOC failed to meet the high burden of granting injunctive relief against plaintiff. At most, a ruling that injunctive relief was unjustified tends to show that Olmanson's desire for an injunction against Balele was ill-conceived; it does not show that Olmanson was lying about her reason for bringing the lawsuit or that Olmanson or anyone else at the DOC sought the injunction for discriminatory reasons.

Dkt. 74 at 24-25 (citation and footnote omitted). Although I analyzed the preclusion issue in the context of a discrimination claim against Olmanson,[1] my reasoning applies just as well to

---

[1] In his Rule 59 motion, Balele also states that he "did not accuse [Olmanson of] discriminating against him for his race when she filed the injunction petition," but rather "accused her [of] filing [an] unjustifiable lawsuit against [him]." Dkt. 79, at 15. In the summary judgment order, I dismissed Balele's malicious prosecution, invasion of privacy, and similar state law claims against Olmanson. Nothing in Balele's Rule 59 motion persuades me that my rulings were incorrect.

Balele's contention of "collusion of fraud" among all the defendants. Balele's own accounting of what happened at the hearing suggests only that the state court judge considered him to be *minimally qualified* for the jobs. But there is nothing in that account that, if given preclusive effect, would change my ruling dismissing Balele's discrimination claims. Balele was of course qualified for the jobs in some sense—he interviewed for each of the four jobs at issue in this case. But defendants chose other people for those jobs because they concluded that Balele was *less qualified* than them, particularly after he unsatisfactorily answered their interview questions. As I explained in the summary judgment order, "courts are not 'superpersonnel department[s]' charged with determining best business practices." *Stockwell v. City of Harvey*, 597 F.3d 895, 901 (7th Cir. 2010). The decision to favor one job applicant over another can be "mistaken, ill-considered or foolish, [but] so long as [the employer] honestly believed those reasons, pretext has not been shown." *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1175 (7th Cir. 2002) (quoting *Jordan v. Summers*, 205 F.3d 337, 343 (7th Cir. 2000)).

Nothing in Balele's account of the state court proceedings suggests that the judge concluded that Balele was the most qualified candidate for the job, or made any other determination that contradicts defendants' hiring rationale. No reasonable jury could draw the inference Balele draws from his account of the state court proceedings: that Olmanson's arguments reveal that the DOC considers African Americans to be inferior. Therefore, I will deny Balele's motion to alter or amend the judgment on this issue.

As noted above, at the summary judgment stage Balele did not provide a transcript of the state court hearing. Balele wished to include the transcript as part of his Rule 59 briefing, but had difficulty obtaining that transcript. He misstated that he had the transcript at the time of his Rule 59 motion, *see* Dkt. 80, at 1, and failed to obtain it by the deadline set by

6

the court after he admitted that he did not have a copy. Balele finally submitted a copy of the transcript, Dkt. 117, more than seven months after briefing on the Rule 59 motion closed, along with a motion asking the court to force the state to pay for half of the $300 cost of producing the transcript, Dkt. 114, and two supplemental briefs, Dkt. 115 and 116. Defendants moved to strike all of these supplemental documents.

I will grant defendants' motion to strike the transcript and supplemental briefs. This court rarely allows briefing beyond the set schedule, and Balele does not explain why I should consider supplemental briefing and evidence filed several months after the briefing schedule closed.

There is another reason not to consider the transcript: Balele's arguments based on it are futile. Even had Balele submitted the transcript along with his briefing, I could not use it to alter or amend the judgment because it is not "newly discovered evidence"; it is the transcript of a hearing that took place years before he filed this lawsuit. Because Balele did not present the transcript at the summary judgment stage, it is too late for him to attempt to submit it after the judgment. *See United States v. 47 West 644 Route 38, Maple Park, Ill.*, 190 F.3d 781, 783 (7th Cir. 1999) ("A party may not introduce evidence or make arguments in a Rule 59 motion that could or should have been presented to the court prior to judgment."); *Frietsch v. Refco, Inc.*, 56 F.3d 825, 828 (7th Cir. 1995) ("It is not the purpose of allowing motions for reconsideration to enable a party to complete presenting his case after the court has ruled against him.").

But even if I did consider the transcript, it adds nothing to Balele's argument I already rejected above. The transcript contains testimony that Balele applied for 16 jobs with the DOC, and he ended up being "certified" for nine of the 16 jobs based on his application

7

materials, meaning that he passed a minimum benchmark for qualification. Dkt. 117 at 64. The court concluded that the state failed to show that Balele had harassed DOC officials by applying for these jobs, in part because he was certified for some of them. *Id*. at 126-27. This mostly tracks Balele's own account of what happened. But as I stated above, whether I consider Balele's account or the entire transcript, the state court's statement that Balele was minimally qualified for some of the jobs for which he applied does not contradict defendants' explanation of their hiring rationale. Defendants were free to assess the candidates' qualifications and performance in the interview process relative to each other, and hire the person they thought best qualified for each job. Balele's assertion that the state court transcript reveals DOC's discriminatory animus is unfounded. I will not force the state to pay half of Balele's costs in producing the transcript.

2. **Underutilization and affirmative action procedures**

At summary judgment, Balele contended that he could show the DOC's discriminatory intent by showing that the DOC circumvented its own affirmative action procedures applying to positions that were "underutilized for women and/or racial and ethnic minorities," supervisory positions, or positions above a certain pay level. Balele's Rule 59 motion is somewhat unfocused, but I take him to be raising two main points about this issue.

First, he contends that all of the jobs at issue in this case were "underutilized" by racial minorities, thus defendants' decision to base their hiring choices on the interview process was a pretext for racial discrimination, because they could have invoked the affirmative action process to ground their hiring decisions on something other than the interviews.

But this just restates a line of argument I rejected at summary judgment. Although Balele stresses several times in his brief that the positions were underutilized, the evidence he provided at summary judgment to support that proposition did not clearly show that the positions were indeed underutilized. Nonetheless, I concluded that, even assuming the positions were underutilized, Balele failed to show that defendants' hiring rationale was pretextual:

> If plaintiff could show that defendants circumvented their own affirmative action policies, that might raise a reasonable inference of discretionary animus, but none of the policies or procedures plaintiff cites say what he believes they do. . . . I understand plaintiff to be arguing that the secretary chose not to intervene in the hiring decisions, in violation of the DOC's affirmative action policies. But plaintiff does not produce any policy stating that the secretary should have intervened in the jobs at issue in this case. One of the affirmative action policies provided by defendants, "Executive Directive 4," indicates that when the DOC's affirmative action officer disagrees with the "hiring justification" provided by an appointing division administrator, the secretary has final say over that hiring decision. Dkt. 64-2. Even assuming that this policy applies to the jobs at issue in this case, plaintiff does not raise a reasonable inference that the policies were disregarded, because he does not adduce any evidence either that the state failed to make a hiring justification or that the affirmative action officer disagreed with the justification, such that the secretary would be brought into the decision. Defendants do not provide a clear picture of how the policies were or were not followed, but it is not their burden to do so; it is plaintiff's burden to show pretext.

Dkt. 74 at 19-20 (footnote omitted).

Balele does not explain why this analysis was incorrect. He states that I "should have demanded to know why the positions' job groups were underutilized for Blacks and other racial minorities for 20 years." I take this to be a contention that the DOC has a long history of failing to hire ethnic minorities. But it was up to Balele to present evidence showing this in an effort to combat defendants' stated rationale for their hiring decisions. He failed to

9

present evidence showing that this was the case. The summary judgment record shows only underutilization data for (1) the late 90s, and (2) the 2014-2017 hiring cycle, so it comes nowhere close to suggesting that the DOC continuously failed to meet its utilization targets for 20 years.

Balele also continues to assert that there are zero African Americans working at DOC headquarters, but he did not provide any evidence supporting that assertion at summary judgment. He includes this statement in a "revised" affidavit attached to his Rule 59 motion, Dkt. 80, but this is not "newly discovered evidence"; it is evidence that should have been available to him at summary judgment and thus cannot be brought in a Rule 59 motion. Also, as defendants argue, the affidavit is of questionable validity because Balele does not say that he swears under penalty of perjury that the statements made within are true. But even ignoring these problems, I cannot consider the statement because Balele does not plausibly base the statement on personal knowledge: he states only that he "know[s]" that there were zero African Americans. Without a persuasive explanation for how he knows this, I cannot consider it as admissible evidence.

His second focus is the DOC's hiring process for a 2014 position "contracts specialist" position.[2] Balele believes that this position was in an underutilized category, because the state's "underutilization table" for July 2014 to June 2017 shows the category "Business Professionals" as underutilized by the DOC.[3] Yet the "recruitment activity plan" form for

---

[2] This position was not one of the jobs explicitly mentioned in Balele's complaint, but as I stated in the summary judgment order, defendants' action regarding this hiring process could be relevant to showing their discriminatory intent with regard to the positions in dispute in this lawsuit.

[3] Defendants contend that the "underutilization table" is inadmissible because it was not properly authenticated by Balele. But this is purported to be a governmental document that

that position states that it was not in an underutilized category. Balele argues that defendants "perjured or lied" on this form by failing to call the position underutilized. I addressed this issue in the summary judgment order:

> Plaintiff argues that the state falsely stated that this position was not part of a job group "underutilized" by racial minorities, and he attempts to prove this by providing a "Statewide Job Group Underutilization Table," Dkt. 61-1, at 76, which he states contradicts the state's classification of the job. But the table does not include an explicit category for "contracts specialist-advanced" positions, and plaintiff does not explain what category listed in the chart covers that job. Plaintiff's unsupported speculation does not raise a genuine issue of fact concerning whether the 2014 position was an underutilized position.

Dkt. 74, at 18. Balele's new assertion that the position fell within the underutilized "Business Professionals" category is not supported by any evidence indicating how he knows that is the case. As with many of his assertions in this case, all that he has provided is his speculation, which is not enough to raise a genuine issue of fact about the DOC's rationale for filling the 2014 position. Of course, even if Balele had supporting evidence, he would have needed to explain why he should be allowed to raise that evidence belatedly in a Rule 59 motion. He fails to make this showing.

Finally, Balele states that "[n]ow [he] is discovering" that Scott Noreuil, a white member of the panel that "re-interviewed"[4] him for the contracts specialist opening in 2011,

---

defendants should be in position to either take at face value or explain its falsity. For purposes of this opinion, I will assume that the document is authentic.

[4] Interviews for the 2011 contracts specialist position were re-conducted after the DOC concluded that the interview panel was "unbalanced," presumably because it contained no members of a racial minority group. Balele argued at summary judgment (and continues to argue in his Rule 59 motion) that the re-interview process was a sham because a person had already been hired to fill that spot, but he failed to present any evidence showing that this was the case. *See* Dkt. 74, at 21-22.

ended up transferring into that position in the 2014 hiring cycle, without being interviewed. But Balele does not actually provide any evidence showing that Noreuil was in fact hired to that position, or that Noreuil did not interview for it, so there is no "newly discovered evidence" to consider on this point, only Balele's bald assertion of what happened. Even if Balele had submitted evidence showing these things, he would have to show that he could not have submitted the same evidence on summary judgment, but he makes no attempt at that showing. And in any event, even if Balele had properly submitted newly discovered evidence to this effect, it would not change the outcome of his claims. Balele still does not explain how he and Noreuil are similarly situated, whether there is any other evidence suggesting that the decision to hire Noreuil had to do with his or Balele's race, or how any problem with the 2014 hiring process could be imputed to the 2011 and 2013 jobs that form the basis for his discrimination claims.

### 3. Legal standard

In discussing the "direct method" of proving a discrimination claim, I stated that one way to prevail under this method was by "constructing a 'convincing mosaic' of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker." Dkt. 74, at 28 (internal quotation omitted). Balele contends that "[t]he Court should forget the 7th circuit old language i.e. presenting creating a mosaic of discrimination. That language is dead." Dkt. 79, at 21. He also states that "[d]efendants lost the case per" *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 135 S. Ct. 2028 (2015). *Abercrombie & Fitch* is not particularly on point because that case involved the question whether an employer in a religious discrimination case needed to have knowledge of a job's applicant's

12

need for religious accommodation. *Id*. at 2031-34. It is not disputed in this case that defendants knew Balele was an African American.

But Balele is correct that the "convincing mosaic" language is disfavored. The Seventh Circuit has made clear that courts must not use the "convincing mosaic" idea as a legal test, or use the "direct" and "indirect" methods of analysis in a way that segregates the evidence a plaintiff brings to prove his discrimination case into two separate analyses. *See Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). "Instead, all evidence belongs in a single pile and must be evaluated as a whole." *Id*. at 766. The real question "is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Id*. at 765.

Legal verbiage aside, this is how I considered Balele's claims in the summary judgment order. *See* Dkt. 74, at 15. ("In any employment discrimination case, the central question is 'whether the employer would have taken the same action had the employee been of a different race (age, sex, religion, national origin, etc.) and everything else had remained the same.' *Moranski v. Gen. Motors Corp.*, 433 F.3d 537, 540 (7th Cir. 2005) (quotation and citation omitted). The problem with Balele's claims was not the legal standard applied; it was that his case was built almost entirely on his own assumptions about why defendants acted the way they did, without any evidence supporting those assumptions. I granted summary judgment to defendants because no reasonable jury could conclude that Balele was denied employment because of his race. Nothing in his Rule 59 motion persuades me that the summary judgment order was incorrect.

13

**B. Rule 60 motion**

Three months after his submission of the state court injunction-hearing transcript, Balele filed a motion titled "Motion . . . for Relief from Judgment/Order and to Re-Open the Above Case Following Availability of Transcript in State Court Proceeding . . . ." Dkt. 126. "Rule 60(b) relief is an extraordinary remedy and is granted only in exceptional circumstances." *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 131 F.3d 625, 628 (7th Cir. 1997).

I will not discuss Balele's arguments in detail because they merely reiterate the arguments he made at summary judgment and in his Rule 59 motion. That is not the proper focus for a Rule 60 motion. *See Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996) ("Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion.").

A losing party *may* being a Rule 60 motion where it discovers new evidence that it could not have previously discovered using reasonable diligence, but the evidence on which Balele focuses in his Rule 60 motion is the state court transcript and the summary judgment affidavit of Kari Beier, the DOC human resources manager, who provided an explanation of the DOC's affirmative action procedures. But neither of these items qualifies as newly discovered evidence. The Beier affidavit was already considered at summary judgment, and as discussed above, Balele does not explain his failure to provide the transcript at the summary judgment stage. In any event, nothing in the affidavit or transcript would have a material effect on my summary judgment ruling. Accordingly, I will deny Balele's Rule 60 motion.

C. **Future motions**

Given Balele's history of vexatious filings, as well as his apparent belief that my rulings have been based on racial animus rather than legal principle,[5] I anticipate that he may try to file additional postjudgment motions. Enough judicial resources have already been consumed on this case. Any future motions filed by Balele in this case, other than a motion regarding an appeal, will be deemed dismissed 30 days after it is filed, unless the court takes other action upon it.

ORDER

IT IS ORDERED that:

1. Defendants' motion to strike plaintiff Pastori Balele's supplemental submissions in support of his motion to alter or amend the judgment, Dkt. 118, is GRANTED.

2. Plaintiff's motion for the court to direct the state to split the cost of producing the transcript of his state court proceedings, Dkt. 114, is DENIED.

3. Plaintiff's motion to alter or amend the judgment, Dkt. 78, is DENIED.

4. Plaintiff's motion for relief from the judgment, Dkt. 126, is DENIED.

5. Any future motions filed by plaintiff in this case, other than a motion regarding an appeal, will be deemed dismissed 30 days after it is filed, unless the court takes other action upon it.

Entered January 10, 2017.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge

---

[5] Among other disrespectful and unfounded comments Balele makes in his filings, he states, "This court was biased against Balele. But that is okay. Blacks have to get used to be bullied by federal judges like Peterson." Dkt. 79, at 5.